IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| **LYNETTE BANNISTER,** | * | |
| | * | |
| Plaintiff, | * | |
| | * | **Civil No. TMD 15-213** |
| v. | * | |
| | * | |
| | * | |
| **CAROLYN W. COLVIN,** | * | |
| **Acting Commissioner of Social Security,** | * | |
| | * | |
| Defendant. | * | |
| ************ | | |

**MEMORANDUM OPINION GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Plaintiff Lynette Bannister seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying her applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 12) and Defendant's Motion for Summary Judgment (ECF No. 13).[1] Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that she is not disabled. No hearing is necessary. L.R. 105.6. For the reasons that follow, Defendant's Motion for Summary Judgment (ECF No. 13) is **GRANTED**, Plaintiff's Motion for Summary Judgment (ECF No. 12) is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

---

[1] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

# I

## **Background**

Plaintiff was born in 1963, has a tenth-grade education, and previously worked as a cleaner and fast-food crew worker. R. at 16, 178, 183. Plaintiff applied for DIB and SSI on January 24, 2012 (with a protective filing date of January 12, 2012), alleging disability beginning on January 1, 2011 (later amended to February 17, 2013), due to high blood pressure, hernia, pain, numbness, arthritis, and vision problems from diabetes. R. at 10, 25, 137-50, 182. The Commissioner denied Plaintiff's applications initially and again on reconsideration, so Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). R. at 50-79, 84-88, 91, 93-98. On December 5, 2013, ALJ William T. Vest, Jr., held a hearing at which Plaintiff and a vocational expert ("VE") testified. R. at 21-49. On January 2, 2014, the ALJ issued a decision finding Plaintiff not disabled from the amended alleged onset date of disability of February 17, 2013, through the date of the decision. R. at 7-17. Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on November 21, 2014. R. at 1-6. The ALJ's decision thus became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On January 26, 2015, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision. Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment. The case subsequently was reassigned to the undersigned. The parties have briefed the issues, and the matter is now fully submitted.

II

**Summary of Evidence**

A.     **State Agency Medical Consultants**

On March 20, 2012, H. Stevens, M.D., a state agency medical consultant, opined that Plaintiff had no medically determinable impairments. R. at 53, 58. On November 1, 2012, another state agency consultant, S. Rudin, M.D., opined that Plaintiff's medically determinable impairments of diabetes mellitus ("DM") and essential hypertension were not severe. R. at 67-68, 75-76.

B.     **Deidre Maccannon, M.D.**

Dr. Maccannon conducted a consultative examination of Plaintiff on October 13, 2012 (R. at 290-96), which the ALJ reviewed in his decision:

> Dr. Maccannon found [Plaintiff] had 5/5 muscle strength, 2+ reflexes, a steady gait and good coordination. Her cranial nerves were grossly intact and she found no joint swelling, erythema, effusion, tenderness or deformity. [Plaintiff] was able to squat and rise with ease. She could heel and toe walk, tandem walk, and dress and undress adequately. [Plaintiff's] range of motion was normal in her cervical and thoracic spine, shoulders, elbows, wrists, hands, hips, knees ankle [sic] and feet bilaterally. Dr. Maccannon's impression was that the examination was essentially normal and [Plaintiff's] prognosis good with good glucose control.
>
>    Moreover, Dr. Mccannon [sic] found [Plaintiff] could sit, stand and walk normally within an eight-hour day without an assistive device. Dr. Maccannon found no limitations lifting, carrying, bending, stooping, crouching or squatting. There were no manipulative limitations. Dr. Maccannon found [Plaintiff] was positive with glare from headlights. Her OD was 20/50 and OS was 20/100. She found some visual limits due to decreased visual acuity.

R. at 15 (citation omitted).

C.     **Khuram Khan, M.D.**

Dr. Khan examined Plaintiff on October 16, 2013 (R. at 297-300), which the ALJ reviewed in his decision:

> [Dr. Khan] found [Plaintiff] suffered from Diabetic retinopathy, advanced OU, stable. He also found no evidence of clinically significant macular edema or proliferative Diabetic retinopathy in either eye. He did find significant vascular changes OU and encouraged [Plaintiff] to perform tight blood sugar control. There was a cataract OU, with mild progression OU. Dr. Khan cleared [Plaintiff] for cataract surgery on that eye.

R. at 15.[2]

**D.    Plaintiff's Testimony**

The ALJ reviewed Plaintiff's testimony:

> [Plaintiff] testified that she suffers from DM, high blood pressure, heart disease and chest pain. She has needles in her fingers due to neuropathy and a cataract that needs surgical intervention. She has difficulty picking the wrong food at the grocery store due to blurry vision. [Plaintiff] was recently in a motor vehicle accident and hurt her back. [Plaintiff] can wash dishes, vacuum, shop, dress and bathe. She can sit for ½ hour and lift up to five pounds occasionally due to chest pain. [Plaintiff] has headaches two or three days a week and sometimes stays in bed three or four days a week. She naps during the day and her blood sugars remain high.

R. at 14-15; *see* R. at 25-42.

**E.    VE Testimony**

The VE testified that a hypothetical person with Plaintiff's same age, education, work experience, and the RFC outlined in Part III below could perform the light, unskilled jobs of locker-room attendant/personal attendant, tray filler/hand packer, or laundry bagger.[3]  R. at 44-

---

[2] "OU" is the "[a]bbreviation for Latin *oculus uterque*, each eye or both eyes." *O.U.*, *Stedman's Medical Dictionary* (28th ed. 2006).

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b). "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." *Id.* §§ 404.1568(a), 416.968(a).

45. The VE's testimony was consistent with the *Dictionary of Occupational Titles*.[4] R. at 45. A reduction in productivity of 10% would prevent substantial gainful activity. R. at 46.

### III

### Summary of ALJ's Decision

On January 2, 2014, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the amended alleged onset date of disability of February 17, 2013; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was unable to perform her past relevant work; but (5) could perform other work in the national economy, such as a locker-room attendant, tray filler/hand packer, or laundry bagger. R. at 12-17. The ALJ thus found that she was not disabled from February 17, 2013, through the date of the decision. R. at 17.

> In determining that Plaintiff had severe impairments, the ALJ found that Plaintiff
>
> established the existence of impairments that cause fatigue and difficulty seeing. These symptoms restrict [Plaintiff's] ability to walk and stand, lift and carry. Because the impairments significantly limit [Plaintiff's] ability to perform basic work activities, [Plaintiff's] diabetes mellitus (DM) with retinopathy represent severe impairments within the meaning of the Social Security Act.

R. at 13-14.

---

[4] "The Social Security Administration has taken administrative notice of the *Dictionary of Occupational Titles*, which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs." *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.8 (9th Cir. 2007); *see Pearson v. Colvin*, 810 F.3d 204, 205 n.1 (4th Cir. 2015); *DeLoatche v. Heckler*, 715 F.2d 148, 151 n.2 (4th Cir. 1983); 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1). "Information contained in the [*Dictionary of Occupational Titles*] is not conclusive evidence of the existence of jobs in the national economy; however, it can be used to establish a rebuttable presumption." *English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993).

The ALJ found that Plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except [Plaintiff] can perform jobs that do not require climbing, or work at unprotected heights, or working around dangerous machinery. [Plaintiff] can perform jobs that do not require fine visual acuity, or a requirement to follow written job instructions. [Plaintiff] can perform simple, repetitive tasks.

R. at 14.

The ALJ gave "great" weight to the findings from Dr. Maccannon's consultative examination, which the ALJ found were consistent with Dr. Khan's findings. R. at 15. The ALJ also considered Plaintiff's credibility and found that her "medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." R. at 15.

## IV

## Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[5]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled,

---

[5] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). RFC is a measurement of the most a claimant can do despite his or her limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the

national economy. *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

V

**<u>Substantial Evidence Standard</u>**

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v.*

*Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## VI

### Discussion

Plaintiff contends that the ALJ erroneously assessed her RFC contrary to Social Security Ruling[6] ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996). Pl.'s Mem. Supp. Mot. Summ. J. 3-6, ECF No. 12-1. Plaintiff maintains that the ALJ failed to perform properly a function-by-function assessment of her ability to perform the physical and mental demands of work. *Id.* at 5. In particular, she contends that, although the ALJ found that her impairments limited her physical and mental abilities to do basic work activities, the ALJ failed to include any limitation related to these activities in his RFC assessment. *Id.* at 5-6. According to Plaintiff, substantial evidence thus does not support the ALJ's RFC assessment. For the reasons discussed below, Plaintiff's assertion is unavailing.

> SSR 96-8p explains how adjudicators should assess RFC and instructs that the RFC
>
> "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations. "Only after that may [residual functional capacity] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." The Ruling further explains that the residual functional capacity "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific

---

[6] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass*, 65 F.3d at 1204 n.3.

medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."

*Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (alteration in original) (footnote omitted) (citations omitted). The Fourth Circuit has held, however, that a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). Rather, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (quoting *Cichocki*, 729 F.3d at 177). The court in *Mascio* concluded that remand was appropriate because it was "left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did not address. *Id.* at 637.

Plaintiff contends that, although the ALJ found at step two that her impairments were severe because they limited her ability to do basic work activities such as walking and standing as a result of her fatigue (R. at 13-14), the ALJ inexplicably failed to include in the RFC assessment any limitation related to these activities. Pl.'s Mem. Supp. Mot. Summ. J. 5-6, ECF No. 12-1. As noted in Part IV above, the Commissioner determines at step two of the five-step sequential evaluation process whether the claimant has a medically severe impairment or combination of impairments. "Step two of the sequential evaluation is a threshold question with a de minimis severity requirement." *Felton-Miller v. Astrue*, 459 F. App'x 226, 230 (4th Cir. 2011) (per curiam). In other words, "the step-two inquiry is a de minimis screening device to

dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Yuckert*, 482 U.S. at 153-54, 107 S. Ct. at 2297-98). Thus, "[t]he findings that the [Commissioner] must make at steps two and four . . . are quite different." *Taylor v. Astrue*, Civil Action No. BPG-11-0032, 2012 WL 294532, at *8 (D. Md. Jan. 31, 2012). "At step four, on the other hand, the [Commissioner] must look to all the evidence on record and determine more precisely how, if at all, the claimant's impairments limit her ability to work." *Id.* "It is possible, therefore, for [the Commissioner] to find at step two that a claimant's condition is severe—because the medical evidence does not conclusively prove otherwise—and yet at step four find no substantial evidence that the condition actually limits the claimant's ability to work." *Id.* Thus, "an ALJ is not required to include a corresponding limitation for each severe impairment." *Copes v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-11-3487, 2013 WL 1809231, at *1 (D. Md. Apr. 26, 2013).

In any event, the ALJ gave "great" weight to Dr. Maccannon's opinion that Plaintiff could be expected to sit, stand, and walk normally without an assistive device in an eight-hour workday with normal breaks. R. at 15, 295. The ALJ also noted Plaintiff's full muscle strength on examination and that she did not have any limitation with lifting. R. at 15, 294-95. The ALJ further found light work appropriate on the basis of the ALJ's observations of Plaintiff at the hearing and her testimony regarding her activities of daily living (R. at 16). *See Johnson*, 434 F.3d at 658; *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (per curiam); *Shively v. Heckler,* 739 F.2d 987, 989 (4th Cir. 1984) ("Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight."). Nonetheless, in light of Plaintiff's complaints of pain and education level, the ALJ limited Plaintiff to simple, repetitive, and unskilled work. R.

at 14, 16. By limiting Plaintiff's RFC to simple, light work, the ALJ thus accounted for Plaintiff's fatigue and ability to walk and stand (R. at 14). *See Szallar v. Comm'r Soc. Sec.*, __ F. App'x __, No. 15-1776, 2015 WL 7445399 (3d Cir. Nov. 24, 2015) (finding that substantial evidence supported ALJ's assessment of claimant's RFC to perform only simple, routine, and repetitive tasks in light of claimant's pain and sleep deprivation); 20 C.F.R. §§ 404.1567(b), 416.967(b) ("Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."). Plaintiff has not identified any evidence of greater limitations resulting from her impairments that the ALJ should have included in the RFC assessment. Because Plaintiff "has failed to point to *any* specific piece of evidence not considered by the Commissioner that might have changed the outcome of [her] disability claim," her argument thus is unavailing. *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014).

In sum, substantial evidence supports the decision of the ALJ, who applied the correct legal standards here. Thus, Defendant's Motion for Summary Judgment is **GRANTED**, Plaintiff's Motion for Summary Judgment is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

## VII

## Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 13) is **GRANTED**. Plaintiff's Motion for Summary Judgment (ECF No. 12) is **DENIED**. The Commissioner's final decision is **AFFIRMED**. A separate order shall issue.


Date: March 4, 2016                                       /s/
                                                  Thomas M. DiGirolamo
                                                  United States Magistrate Judge